VANDENBURGH *v.* MAYOR, ETC., OF THE CITY OF NEW YORK *et al.*

(*Superior Court of New York City, Special Term.* May 23, 1889.)

1. AMENDMENT OF JUDGMENTS.

A court in New York has power to amend or vacate its judgment, though more than a year has passed since entry of the judgment.

2. SAME.

In an action to foreclose a mortgage made by a railway company, the city of New York was made a party defendant, the complaint alleging that this was done, "because the plaintiff was informed that the city might have or claim an interest in the property" mortgaged, "and in the relief demanded in the complaint. No claim or demand is made against" the city. It was not alleged that the mortgage was prior or superior to the interest of the city. A judgment for plaintiff recited that all the allegations of the complaint were true, and that the railway company owned certain described land, for the purpose of erecting and operating a railway thereon. It then proceeded to lay out the route of the railway, recited that the railway company had commenced to build the railroad, as required by the statute creating the company, and provided that "said corporation defendants, their officers, and servants, will respect the aforesaid orders, judgments, and decrees herein." *Held,* that such judgment affected the city in a manner not authorized by the complaint, and would be amended on the city's motion.

On motion by defendants, the mayor, aldermen, and commonalty of the city of New York, to amend a judgment so far as it affects said defendant, or to open the same and let said defendant into a defense.

*David J. Dean,* for the motion, *Henry D. Sedgwick, George Hoadley,* and *Edward Winslow Paige, contra.*

TRUAX, J. The judgment that the defendant, the mayor, etc., seeks to open was entered on the 11th day of January, 1876. Two questions are presented to the court by this motion. The first one is, has the court power to

vacate or amend its judgment 13 years after the entry thereof? And the second one is, is this a case in which the court should exercise such power, if it has it? In *Hogan* v. *Hoyt*, 37 N. Y. 300, the court of appeals held that a judgment of foreclosure and sale, which had been entered in January, 1855, was properly amended *nunc pro tunc* in 1864. "The question," said the court, "was one addressed to the discretion of the court below." In *Hatch* v. *Bank*, 78 N. Y. 487, the court of appeals held that it is within the discretion of the court in which a judgment is entered to vacate the judgment at the request of the plaintiff, although the order to vacate the judgment was not made until more than a year after the judgment had been satisfied. The judgment was satisfied August 7, 1876. The order granting the motion to vacate the judgment was made February 5, 1879. "The power to amend," said the court of appeals, "is an inherent power, and not limited in matters of substance by the sections of the Code, (section 174 of old Code, section 724 of new Code,) while section 723 seems to authorize its exercise in the furtherance of justice." In *Farish* v. *Austin*, 25 Hun, 430, the supreme court in the first department set aside a judgment 16 years after its entry. These cases show that a court has power to set aside a judgment, although more than one year has passed since the entry of the judgment.

Is this case one in which the court should exercise such power? The action was brought to foreclose a certain mortgage made by the New York City Central Underground Railway Company. The city of New York was made a party to that action, but it was alleged in the complaint that it was made a party "because the plaintiff was informed that the city might have or claim an interest in the property covered and conveyed in the two mortgages mentioned and in the relief demanded in the complaint. No claim or demand is made against the said mayor, aldermen, and commonalty of the city of New York." The relief demanded was that the plaintiff have judgment for a certain sum of money, and the costs of the action; that it be adjudged that the mortgage dated July 1, 1873, be foreclosed, and also that said company, and all claiming under it, be foreclosed of the right to perform any of the agreements in the instrument dated March 13, 1875; that the mortgaged franchises and property be sold and the proceeds applied to satisfy the indebtedness due plaintiff; that a certain mortgage be canceled; that the said company, its officers and agents, be enjoined and restrained from issuing bonds under said mortgages, and from incumbering or interfering with its property; and that the court grant such other and further relief as may be equitable and just in the premises. There is nothing in this demand for relief that affects the city. The only parties who could be "foreclosed" are those who claimed under the company. There is no allegation in the complaint that affects in any way the city, except the allegation that it might have or claim an interest in the property conveyed in the mortgages mentioned in the complaint and in the relief demanded in the complaint, and this allegation was joined to the statement that no claim or demand was made, and no relief was demanded, against the city, because there is nothing to show that the city claimed under the New York City Central Underground Railway Company. But the judgment that was entered did very materially affect the city. It was adjudged, among other things, that all the allegations contained in the complaint were true in manner, form, and substance; that the said New York City Central Underground Railway Company owned the right and occupancy, seizure and possession, of the land, premises, and grounds afterwards described in the judgment for the use and purpose of constructing, maintaining, and operating a double-track railway; for the use and purpose of constructing, maintaining, and operating a branch railway to the Central park, and railway connections with steam and horse railroads; to make and maintain double or single tunnel or tunnels or subways, for the same; to light, ventilate, and drain such tunnels or subways; to make, construct, and maintain openings for ventilation or light

extending from such tunnel, tunnels, or subways to the outer edges of the sidewalks of the streets or avenues, or to the surface of the squares under which the same shall be constructed; to construct, maintain, and operate an elevated railway from Ninty-Ninth street to and along the Harlem river on said lands and premises; to construct and maintain the proper platforms, stations, and buildings thereon and therein; to make and maintain the necessary connections, turn-outs, sidings, switches, and other conveniences for the proper working and accommodation of said railways. The judgment then proceeded to lay out the route of the road. It was also adjudged that the said railway company, prior to the 10th day of May, 1871, commenced the construction of the tunnel and railway which by statutes the said railway company was authorized to construct and operate; that the workmen of said railway company were employed for several weeks thereafter at the excavation and masonry for the tunnel wall of said railway; and that "said corporation defendants, their officers and servants, will respect the aforesaid orders, judgments, and decrees herein."

This judgment, as far as it affects the defendant, the mayor, alderman, etc., of the city of New York, was erroneous. There was no allegation in the complaint that the mortgage was prior, superior, or hostile to the interest of the defendant, the mayor, aldermen, etc., of the city of New York, and the only effect that such judgment could rightly have against the city would be to cut off any rights that it had which were subsequent to the mortgage. It has been held that a foreclosure action is not the proper mode to litigate rights claimed in priority or in hostility to the mortgage. *Bank* v. *Thomson*, 55 N. Y. 7. Under the authority of this case the adjudication against the defendant, determining the route of the road and that the New York City Central Underground Railway had commenced operations in building the road, as required by the statutes creating the company, were unauthorized, and voidable, because there was no allegation in the complaint that warranted such a relief, and no such relief was demanded in the complaint. It may be that the defendant, the mayor, etc., of the city of New York, is not bound by this judgment, and that they could attack the judgment at any time collaterally; but the cases first above cited show that they have the right to move to correct or amend or modify this judgment, and they should not be compelled to await until the judgment is used as a means of offense against them before they attack it. The court had no jurisdiction to make the judgment that was made, and this want of jurisdiction may be set up collaterally or otherwise. *Kamp* v. *Kamp*, 59 N. Y. 217 It was said in this last-mentioned case that the want of jurisdiction to make the judgment complained of may be set up by the defendant as a defense, but that the defendant is also at liberty, by a more direct and summary proceeding, to have the judgment set aside and vacated.

The motion to amend the judgment by striking out the portion referred to is granted, with $10 cost. The order may be settled on two days' notice.